United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATASHA HENRY,
Plaintiff,

v.

TRANSDEV SERVICES, INC., et al.,
Defendants.

Case No. 26-cv-09062-NW

**GRANTING MOTION TO REMAND**

Re: ECF No. 15

Plaintiff Natasha Henry sued her former employer in Monterey County Superior Court, alleging she was discriminated against and wrongfully terminated from her position as a bus operator. Her former employer, Defendants Transdev Services, Inc., Transdev Fleet Services, Inc., Transdev Fleet Services, Inc., and Transdev Alternative Services, Inc. (collectively, "Transdev"), and Transdev operations manager David Cox (collectively with Transdev, "Defendants"), removed the action to this Court on the ground that Henry fraudulently joined Cox, a California citizen, and his citizenship should be disregarded for the purpose of determining this Court's diversity jurisdiction. Henry now moves to remand the case back to state court. The motion to remand is fully briefed. ECF Nos. 17 ("Opposition"), 18 ("Reply"). The Court finds the motion suitable for determination without oral argument, and VACATES the December 9, 2026 hearing. Civ. L.R. 7-1(b). Because the Court finds that there is at least a "possibility" that Henry has a valid claim against Cox, the Court GRANTS Henry's motion to remand the action to state court.

United States District Court
Northern District of California

## I. BACKGROUND[1]

Henry is a woman of Trinidadian descent who wears a head wrap as an expression of her cultural identity. Transdev hired Henry as a bus operator sometime before December 2025.[2] To Henry's knowledge, she was the only Trinidadian employee in her workplace. Around December 2025, Henry alleges that she was "instructed by [Cox] that she could not wear her cultural head wrap because it was 'too colorful,' despite the head wrap being an expression of her cultural identity." Compl. ¶ 14.

In January 2026, Henry discovered that Transdev had not compensated her "for all hours worked and all hours she was entitled to be paid." *Id.* ¶ 15. She claims that in February 2026, she worked extended shifts without the required meal and rest breaks, and on one occasion was required to record meal and rest breaks that she had not taken. Henry alleges that she repeatedly notified management of these compensation issues.

On February 18, 2026, while transporting a client, Henry's bus collided with an obstruction in the roadway, causing the front bumper of the bus to detach. Henry alleges she immediately reported the incident to her supervisor and complied with Transdev's subsequent investigation. The next day, Cox and Safety Manager Kelly Harris informed Henry that her employment was being terminated. Henry's employment was briefly reinstated when her union intervened, but when she returned to work after the intervention, she alleges that "Defendants subjected her to heightened scrutiny, increased discipline, and a heavier workload than similarly situated employees[,] [d]espite [her] continued satisfactory performance of her job duties[.]" *Id.* ¶ 21.

After her reinstatement, Henry continued to complain to Transdev and to her union about Transdev's "unlawful wage and hour practices." *Id.* ¶ 23. Henry contends that Transdev continued to discipline her, then terminated Henry again around the end of March 2026.

---

[1] Unless otherwise noted, the facts are taken from Henry's complaint. ECF No. 1-2 ("Compl.").

[2] Henry's complaint and the motion to remand mistakenly state that Henry was hired "in or around October 13, 2026," but the complaint was filed before then, in August 2026. Based on the allegations in the complaint and Defendant Cox's declaration, ECF No. 17-1 ("Cox Decl."), it appears that Henry was employed by Transdev at the latest by December 2025.

On August 27, 2026, Henry filed a complaint against Defendants, bringing six claims: (1) race and national origin discrimination (Cal. Gov. Code § 12940 *et seq.*); (2) failure to prevent discrimination and harassment (Cal. Gov. Code § 12940(k)); (3) a violation of California Labor Code section 1102.5; (4) wrongful termination in violation of public policy; (5) intentional infliction of emotional distress ("IIED"); and (6) unfair competition (Cal. Bus. & Prof. Code § 17200 *et seq.*). Henry's complaint alleges that "Defendants' stated reasons for terminating her employment were false and pretextual, and that [her] repeated complaints regarding Defendants' unlawful wage-and-hour practices were a substantial motivating reason for Defendants' decision to terminate her employment." *Id.* ¶ 24. She further alleges that her "national origin and ancestry" also motivated Defendants' "unlawful conduct." *Id.* Henry pleads only one claim as to Cox specifically, for IIED.

The same day Henry filed her complaint, Defendants removed the action to this Court, based on diversity jurisdiction. *See* ECF No. 1. Transdev's removal notice affirms the amount in controversy is greater than $75,000, which Henry does not dispute. *See id.* ¶¶ 51–82. Defendants claim the Court may exercise diversity jurisdiction because all Defendants are citizens of other states, except Cox, whose California citizenship must be disregarded because Henry fraudulently joined him as a defendant. *Id.* ¶¶ 31–48.

On September 18, 2026, Henry moved to remand the case, arguing that Cox is *not* a fraudulently joined defendant, as demonstrated by the viable, individual IIED claim alleged against Cox in Henry's complaint. ECF No. 15. Henry asserts that the IIED cause of action against Cox is sufficient on its face but even if it were not, it is certainly sufficient to be granted leave to amend. *See id.* The motion to remand is now fully briefed. *See* Opposition, Reply. The Court finds the motion suitable for determination without oral argument, and VACATES the December 9, 2026 hearing. Civ. L.R. 7-1(b). Because the Court finds that there is at least a "possibility" that Henry has a valid claim against Cox, the Court REMANDS the action to state court.

## II. LEGAL STANDARD

A defendant may remove "any civil action brought in a State court of which the district



United States District Court
Northern District of California

courts . . . have original jurisdiction[.]" 28 U.S.C. § 1441(a). Though removal based on diversity jurisdiction generally requires complete diversity of citizenship, "one exception to the requirement for complete diversity is where a non-diverse defendant has been fraudulently joined." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quotation omitted); *see* 28 U.S.C. §§ 1332(a), 1441(b).

"The fraudulent joinder doctrine requires courts to disregard the citizenship of defendants when no viable cause of action has been stated against them, or when evidence presented by the removing party shows that there is no factual basis for the claims alleged against the defendants." *Hurd v. American Income Life Ins.*, 2013 WL 5575073, at *3 (C.D. Cal. 2013) (citing *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067–68 (9th Cir. 2001)). There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citation omitted). "Fraudulent joinder is established the second way," as relevant here, "if a defendant shows that an individual joined in the action cannot be liable on any theory." *Id.* (internal quotations and citations omitted). "But if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (internal quotations and citations omitted) (emphasis original).

Courts generally "look only to a plaintiff's pleadings to determine removability." *Cocchi v. Cir. City Stores, Inc.*, No. C-05-1347 JCS, 2005 WL 8162914, at *4 (N.D. Cal. July 15, 2005) (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). But upon a claim of fraudulent joinder, "[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). In proving fraudulent joinder, "defendants . . . face both the strong presumption against removal jurisdiction and the 'general presumption against fraudulent joinder.'" *Hunter*, 582 F.3d at 1046 (quotation omitted). That a pleading would not survive a motion to dismiss under the 12(b)(6) standard is not enough to establish fraudulent joinder; the mere *possibility* of a

viable claim precludes it. *Grancare*, 889 F.3d at 549 (9th Cir. 2018).

## III. DISCUSSION

Here, Cox—an individual who resides in California—is the only defendant who shares citizenship with Henry. If Cox was fraudulently joined, the Court may disregard that his citizenship destroys complete diversity and continue to exercise jurisdiction. If Cox was not fraudulently joined, however, the Court lacks jurisdiction and should remand the case to state court, as Henry requests. Because Henry asserts one cause of action against Cox, for IIED (Compl. ¶¶ 52–57), whether Cox was fraudulently joined turns on whether there is any possibility that a state court would find that Henry has a cause of action against Cox for IIED, or whether Defendants have presented evidence establishing that Cox "cannot be liable on any theory." *See Grancare*, 889 F.3d at 548; *Ritchey*, 139 F.3d at 1318.

Henry's IIED claim pleads that all "Defendants['] discriminatory, harassing, and retaliatory actions against Plaintiff[] constituted severe and outrageous misconduct and caused Plaintiff[] extreme emotional distress," and that all Defendants intended to cause or recklessly caused such emotional distress. Compl. ¶¶ 53–54. Henry's complaint makes only two allegations as to Cox's specific actions: first, that "she was instructed by [Cox] that she could not wear her cultural head wrap because it was 'too colorful,' despite the head wrap being an expression of her cultural identity," *id.* ¶ 14; second, that Cox, along with and Safety Manager Kelly Harris, "informed [Henry] that her employment was being terminated" following her collision with a roadway obstruction while she was transporting a client. *Id.* ¶ 19.

Defendants claim that Henry's allegations could not possibly give rise to an IIED claim against Cox for two reasons: first, under *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55 (1996), Cox's alleged actions were "personnel management" decisions that cannot rise to the level of "extreme and outrageous" required to state a claim for IIED. Opposition at 3–6. Second, Defendants state that because Cox's actions amount only to ordinary personnel management, Henry's IIED claim against Cox is independently barred by the Workers' Compensation Act's exclusivity provision. *Id.* at 6–7. The Court addresses each objection to remand in turn.

**A. Cox's Liability as a Supervisory Employee**

Defendants urge the Court to conclude that because Cox's conduct constituted mere "personnel management" decisions it is insufficient to support an IIED claim under *Janken*, 46 Cal. App. 4th 55. In *Jenkin*, the plaintiffs—current and former employees of the defendant company, Hughes—alleged that Hughes and several supervisory employees unlawfully subjected the plaintiffs to adverse employment actions on the basis of age, in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12900–96. *Janken*, 46 Cal. App. 4th at 61, 79. The plaintiffs also alleged the defendants' acts of age discrimination constituted IIED. *Id* at 61.

In determining whether the plaintiffs' claims against the individual defendants were viable, the *Janken* court first evaluated whether the defendants' actions could be categorized as "discrimination" or "harassment" under FEHA, which governs whether an individual supervisory defendant or only the employer may be held liable. *Id.* at 79. Under FEHA, "Liability for discrimination . . . is limited to the 'employer' only." *Id.* at 65. "[L]iability for harassment, [by contrast,] extends to 'any person' and hence extends to 'individuals,' encompass[ing] individual supervisory employees." *Id.* Conduct alleged to be unlawful is categorized as discrimination under FEHA if it is "inherently necessary to performance of a supervisor's job." *Id.* at 63. Harassment is more egregious: it is "conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Id.* Because the conduct the *Jenkins* plaintiffs complained of was "within the realm of properly delegated personnel management authority," the court held that it amounted to discrimination only under FEHA, and did not rise to the level of harassment for which the individual supervisory employee defendants could be held liable. *Id.* at 79.

As relevant to the IIED claim, *Janken* held that conduct categorized as discrimination under FEHA necessarily is "not outrageous conduct beyond the bounds of human decency," as required to establish IIED, "but rather conduct essential to the welfare and prosperity of society." *Id.* at 80. Because the conduct of which the *Jenkins* plaintiffs complained was ordinary personnel management, the plaintiffs' IIED claims against the individual supervisory employees failed. *Id.*

at 79–80. Though *Janken* held that FEHA discrimination cannot give rise to an IIED claim, it notably did not preclude a claim for IIED against an individual supervisory employee where harassment, rather than discrimination, is alleged. *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 n.10 (2017).

Here, Defendants argue that Cox's alleged actions amount to only "personnel management" decisions, not the "extreme and outrageous conduct" that an IIED claim requires under California law. Opposition, 3–6; *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991). To decide whether Cox was fraudulently joined, the Court need not determine whether Henry has adequately stated a claim for IIED under the motion to dismiss standard, but merely whether Henry has "shown a *possibility* of recovery against" Cox. *Grancare*, 889 F.3d 543, 549 (9th Cir. 2018) (emphasis added) ("A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined."); *see also Hunter*, 582 F.3d at 1046. The Court considers the two actions alleged against Cox specifically.

To start, informing an employee that she has been terminated is a "personnel management" decision that is essential to a supervisor's job, akin to the conduct in *Janken*, 46 Cal. App. 4th at 80 (plaintiffs alleged "that the defendants collectively or individually . . . demoted, terminated or laid off plaintiffs[,] . . . and similar claims."). Absent substantial amendments to add specific allegations of harassment or other extreme and outrageous conduct during the meeting—facts that appear unlikely to exist, based on the current pleading—Cox's meeting with Henry to inform her that her employment was being terminated could not possibly support a claim for IIED.

Whether Cox's supervisory role as an operations manager required him to tell Henry that she "could not wear her cultural head wrap because it was 'too colorful,'" however, is not so clear. Cox Decl. ¶ 2; Compl. ¶ 14. Defendants claim Cox's comment "that Plaintiff's head wrap was 'too colorful' is, at most, an isolated comment about dress-code compliance"—a personnel management decision. Opposition at 5. Cox's declaration, offered by defendants to establish fraudulent joinder, supports this position: Cox states that he confronted Henry about her head wrap only because he was concerned that the colors of Henry's head wrap did not "match the company's uniform colors, which are navy and black." Cox Decl. ¶ 4.



United States District Court
Northern District of California

But that is not what Henry alleges occurred. Henry pleads that Cox told her she *could not wear* her cultural head wrap, not simply that the head wrap she wears must match her uniform. Compl. ¶ 14. Cox states the company requires employees' attire to "match the company's uniform colors," not that employees were not permitted to wear head coverings at all. Cox Decl. ¶ 4. And while Cox may well apply the color matching policy equally "to all employees," as he claims, Henry complains of other disparate treatment—the instruction that she cannot wear her cultural head wrap. Cox's declaration at best creates disputes of fact; it does not preclude Henry's claim that Cox's instruction to her—"the only Trinidadian employee working at her assigned location"—was unnecessary to his supervisory duties and "engaged in for personal gratification, because of meanness or bigotry, or for other personal motives," which could amount to harassment. Compl. ¶ 13; *Janken*, 46 Cal. App. 4th at 63. Indeed, a court could infer that Cox equating his instruction to Henry regarding her head wrap with his instructions to other employees regarding "ball caps that did not match the uniform" and a "sweatshirt bearing a cartoon character" reflects a personal prejudice unrelated to his supervisory role.

While Henry's IIED pleading is thin and it may not survive a motion to dismiss without significant amendments, that question is for a later day and a different court. This Court need only consider whether Defendants have met their "heavy burden" to establish fraudulent joinder despite the "general presumption against [finding] fraudulent joinder." *Grancare*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1046). At this early stage of the case, Henry has stated enough facts to establish a possibility that a state court would find that Henry can proceed with her claim against Cox. Defendants therefore have not established that Cox's joinder is fraudulent.

**B. The Workers' Compensation Act's Exclusivity Provision**

Next, Defendants argue that the exclusivity provision of the California Workers' Compensation Act ("WCA") bars Henry's claim against Cox. Opposition at 6–7. The WCA provides that worker's compensation is an employee's "sole and exclusive remedy" for an injury occurring on the job, including an emotional distress injury. *See* Cal. Lab. Code §§ 3600, 3602; *Livitsanos v. Superior Ct.*, 2 Cal. 4th 744, 754 (1992). California courts have explained that "the WCA's exclusive remedy provision bars civil claims other than for workers' compensation if: (i)



United States District Court
Northern District of California

the employee's injury resulted while he or she was subject to the 'compensation bargain' and (ii) the employer's conduct did not exceed the scope of that bargain." *Piril v. Ferguson Enters., LLC*, No. CV213800PSGRAOX, 2021 WL 3630372, at *3 (C.D. Cal. Aug. 17, 2021) (citing *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008); *see also Shoemaker v. Myers*, 52 Cal. 3d 1, 16 (1990); *Gunnell v. Metrocolor Lab'ys, Inc.*, 92 Cal. App. 4th 710, 720 (2001).

An employee's injury is subject to the "compensation bargain" under the first prong of the exclusivity provision if it occurred while the employee was engaged in conduct "arising out of" or "incidental to" her employment and was "within the scope of employment." Cal. Lab. Code § 3600. Here, Henry's alleged IIED injury is clearly subject to the compensation bargain because her interactions with Cox arose out of or were incidental to her employment, as Cox was in a supervisory role as operations manager, and were within the scope of Henry's employment because the interactions appear to have occurred in the workplace. Cox Decl. ¶ 4. As a result, Henry's IIED claim is barred by the WCA's exclusive remedy provision unless Cox's conduct exceeded the scope of the compensation bargain under the second exclusivity prong.

Under the second prong of the exclusivity test, conduct falls outside the scope of the compensation bargain if it "exceeds the risks inherent in the employment relationship." *Livitsanos*, 2 Cal. 4th at 754. The California Supreme Court has held that that emotional distress claims arising from decisions that are "a normal part of the employment relationship," such as "demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances," do not fall outside the scope of the compensation bargain, and are barred by the WCA's exclusive remedy provision. *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987). But several other courts applying the WCA exclusivity framework have concluded that emotional distress *predicated on discriminatory employment practices* are not similarly barred. *See, e.g.*, *Light*, 14 Cal. App. 5th at 101 ("[W]e are unwilling to abandon the long-standing view that unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity."); *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 352 (1993) ("[A] claim for emotional and psychological

United States District Court
Northern District of California

damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices."); *Gibson v. Am. Airlines*, No. C 96-1444 FMS, 1996 WL 329632, at *5 (N.D. Cal. June 6, 1996) ("Discriminatory conduct exceeds the bounds of a normal employment relationship.").

As discussed above, there is at least a possibility that Cox's comment to Henry that she could not wear her culturally significant head wrap was unrelated to Cox's supervisory duties and was engaged in for personal motives—conduct that plainly "exceeds the risks inherent in the employment relationship." *Livitsanos*, 2 Cal. 4th at 754. The Court cannot conclude that Henry's IIED claim is precluded by the WCA's exclusivity provision. For this reason, too, Defendants have not met their burden to show that Cox's joinder was fraudulent.

## IV. CONCLUSION

Because Defendants have not established that Cox is a fraudulently joined defendant, the case lacks complete diversity and the Court cannot exercise diversity jurisdiction to hear Henry's claims. Accordingly, the Court REMANDS this action to state court.[3]

**IT IS SO ORDERED.**

Dated: November 24, 2026

Noël Wise
United States District Judge

[3] Because the case is remanded, Defendants' motion to dismiss (ECF No. 11), is TERMINATED AS MOOT.